UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02564-WYD

LEO E. LOPEZ, JR.,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits. For the reasons stated below, this case is reversed and remanded for an immediate award of benefits to Plaintiff.

I.    INTRODUCTION AND BACKGROUND

Plaintiff was born in September 1974, and was 31 years old on the alleged disability onset date. (Transcript ["Tr."] 21). He attended three years of college (*id.* 99), and has past work experience as a crane operator and assembly technician. (*Id.* 101.)

Plaintiff filed an application for disability insurance benefits on July 25, 2006, alleging disability beginning on April 20, 2006, due to chronic back pain, depression, anxiety, hypertension, and acid reflux. (Tr. 75-79, 89, 93.) His application was denied initially, and Plaintiff requested a hearing. (*Id.* 54-57, 60.) A hearing was held on March 11, 2008. (*Id.* 23-53.) The ALJ issued a decision on October 20, 2008, finding that Plaintiff was not disabled. (*Id.* 5-22.)

In his decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 20, 2006, the alleged onset date. (Tr. 10). At step two, the ALJ found that Plaintiff had severe impairments of depression, anxiety, a herniated disc at L5-S1 without any neural foraminal or nerve root impingement, and obesity. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that the Listings. (*Id.* 10-15.)

The ALJ determined that Plaintiff's subjective complaints were not entirely credible. He also found that Plaintiff retained the residual functional capacity ["RFC"] to perform light work except with occasional climbing ramps, stairs, ladders, ropes and scaffolds; occasional stooping, kneeling, crouching, and crawling; and frequent balancing. In addition, Plaintiff was limited to unskilled to semi-skilled work "due to his mental impairments and pain complaints." (Tr. 15-20.)

At step four, the ALJ found that Plaintiff was not disabled because he could do his past work as a crane operator despite his limitations. (Tr. 21). Additionally, the ALJ found that Plaintiff could do other jobs that exist in significant numbers such as flagger, small products assembler, and packager. (*Id.*)

The Appeals Council declined Plaintiff's request for review. (Tr. 1-3.) Plaintiff timely requested a judicial review, and this appeal followed.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.    <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

I agree with Plaintiff that the ALJ's decision was not supported by substantial evidence. The ALJ essentially rejected the two treating physicians' opinions and the consultative examiner's opinions which would have required the ALJ to find Plaintiff to be disabled in favor of an opinion of a single decision maker ["SDM"] who is not a medical provider and whose opinion is not supported by any other medical evidence in the file. I find that this is error which requires outright reversal.

Turning to the medical evidence, treating physician Dr. Salvatore completed a physical work assessment of Plaintiff on January 23, 2008. (Tr. 245-49.) Dr. Salvatore opined, among other things, that Plaintiff could not sit, stand or walk for prolonged periods, or in combination for more than four hours per day, could lift 10 pounds rarely

and less than 10 pounds frequently, and would miss more than four days of work per month.  (*Id.*)  The ALJ stated that he did not give this opinion controlling weight, but did not conduct the proper analysis of this issue.  (*Id.* 18.)

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).  The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion.  *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994).  The ALJ's failure to properly consider the issue of whether a treating physician's opinion is entitled to controlling weight is error which generally requires a remand of the case.  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2).

In this case, the ALJ stated that he was not giving Dr. Salvatore's opinion controlling weight for a number of reasons.  The only reason related to the medical evidence is the ALJ's finding that Dr. Salvatore's opinion "is not consistent with the imaging and objective tests showing minimal degeneration, and no stenosis or impingement in the lumbar spine, and no abnormalities on the EMG/nerve conduction test." (Tr. 19.)  This is not, however, the applicable analysis for determining whether controlling weight should be provided to an opinion.  Instead, as discussed above, the

opinion must be accepted if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.

Further, the ALJ ignored the fact that Dr. Salvatore's opinion is supported by clinical findings, including the fact that Plaintiff suffers from "palpable spasm in back muscles" and walks with a cane and limps. (Tr. 245.) These findings were also documented in Dr. Salvatore's medical records, as well as notations of tenderness, walking in crouch, tight hamstrings, and muscle tightness. (*Id.* 256, 265.) Noted symptoms of these problems included low back pain radiating down both legs, which Dr. Salvatore found was constant and was not helped by the numerous techniques that Plaintiff tried to relieve his pain. (*Id.* 245.) A medical doctor's statements about a claimant's condition or impairments "are specific medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Id.* (finding error with the ALJ's decision to reject the opinions of treating physicians because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that Plaintiff's condition deteriorates under stress is a specific medical finding).

Further, Dr. Salvatore's findings do not appear to be inconsistent with other substantial evidence in the record. Indeed, substantial evidence in the record supports Dr. Salvatore's findings. Dr. Gregg made findings of "muscle spasms paraverebral from iliac to thoracic". (Tr. 267, *see also* 271.) Dr. Sandell found "diffuse tenderness over the midline, as well as the paraspinal muscles in the lumbrosacral region. . . ROM testing revealed pain more so with extension vs. flexion. . . also demonstrated

weakness and pain when returning to an upright position from thoracolumbar flexion". (*Id.* 148.)

Treating physician Dr. Keefe's findings also support those of Dr. Salvatore. He noted "paraspinous spasm[s]" in Plaintiff's back, that Plaintiff's "spasm and pain. . . is worse with flexion-extension or rotation", and that Plaintiff had positive straight leg raising at 90 degrees (as acknowledged by the Commissioner in his response brief at page 3, a positive straight leg raise indicates possible disc herniation). (Tr. 152-154, 157, 159, 162, 163.) Dr. Keefe opined that Plaintiff's "[m]uscular back pain [was] probably from the jerking of the crane at work". (*Id.* 154.) Dr. Keefe also noted that Plaintiff had a previous MRI suggesting a herniated disc at L5-S1 without nerve root impingement, and said Plaintiff was dependent upon high doses of narcotics. (*Id.* 160.) Ultimately, he found that Plaintiff was disabled from working.

Even consultative examiner Dr. Amin, who saw Plaintiff after the hearing on April 12, 2008 (Tr. 19), found objective symptoms in support of Plaintiff's complaints of back pain. He noted limited range of motion of the left hip as well as the lower back, as well as straight leg raising positive for lower back pain. (Tr. 278.) The ALJ did not properly consider these medical findings. Further and importantly, his opinion provided support for Dr. Salvatore's assessment that Plaintiff was limited in sitting, standing and walking.

Thus, while the MRI and EMG/nerve conduction tests may not have revealed a clear etiology, there are objective signs as noted by Dr. Salvatore and the other medical providers that support the existence of the back problems and pain that Plaintiff is experiencing. The ALJ improperly selectively applied the evidence, picking only findings

which supported his conclusion and ignoring the findings which supported a finding of disability. *Carpenter v. Chater*, 537 F.3d 1264, 1265 (10th Cir. 2008). He also failed to determine whether Dr. Salvatore's medical findings in her records, independent of her assessment of Plaintiff's physical abilities, were entitled to controlling weight.

I also find that the ALJ's other reasons for rejecting Dr. Salvatore's opinion are not supported by the record. The ALJ found in that regard that Plaintiff "has been able to not use pain medication and still continue to function as evidenced by his March 2008 testimony and April 2008 consultative examination." (Tr. 18.) However, the ALJ again selectively applied the evidence, failing to note Plaintiff's testimony that the pain medication did not help and that he has a very difficult time functioning. (*Id.* 35-41, 47-48.) The ALJ also rejected Dr. Salvatore's assessment of Plaintiff's impairments because "at the time she completed the assessment, the claimant had a recent flare of his back condition due to the car accident—thus, [Plaintiff's] presentation is not indicative of his functioning during the relevant period." (*Id.*) However, this was speculation and an improper lay judgment of the ALJ. The ALJ has no way of knowing whether this statement is true. The only way the ALJ's finding could have been verified was to contact Dr. Salvatore on the issue. He failed, however, to do so.

The ALJ also found that "the claimant does not appear to have ever told Dr. Salvatore that he is the primary caregiver for two young children." (Tr. 18.) This is inaccurate, as Dr. Salvatore noted in a treatment record that Plaintiff "stays at home with 2 kids, 2 and 4 [years old]." (*Id.* 262.) Even if the finding had been accurate, an ALJ cannot reject a treating physician's opinions based on his own lay judgment that it

would have been different if certain information was available to the physician.  *See* 20 C.F.R. § 404.1512(e)(1) (requiring ALJ to "seek additional evidence or clarification from [the] medical source when the report from [the]  medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . ."); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) .

The ALJ also stated that Plaintiff can perform child care, which work he found to be more than full time and which requires lifting more than 10 pounds and bending more than occasionally.  (Tr. 18.)  He found that if Plaintiff can perform child care, he can perform the light RFC assessed by the ALJ.  (*Id.*)  Again, however, the record shows that Plaintiff testified he was very limited in his activities regarding watching the children.  (*Id.* 47-48; *see also* 265-Dr. Salvatore's treatment record indicating that Plaintiff told her he could hardly play with his children.) The ALJ erred in completely discounting this evidence.  (*See id.* at 19-20.)  More importantly, the ALJ's finding that Plaintiff's ability to perform child care means that he can work full time in a light RFC is unsupported by any evidence.  It also directly conflicts with the assessment of Dr. Salvatore who knew of the fact that Plaintiff stayed at home.  Accordingly, the ALJ's finding equating child care with a light RFC is not supported by substantial evidence.

A case I find relevant to this issue is *Delaney v. Barnhart*, No. 03 C 8117, 2005 WL 1655204, at *9 (N.D. Ill. 2005).  In that case, as here, the ALJ "highlight[ed] Delaney's care-taking [of his daughter] as a factor" in deciding that the claimant was not credible but erred in ignoring evidence that the claimant did not perform strenuous or complicated activities and/or needed support to accomplish them.  *Id.* at *9.  Further, the

court found that even if Delaney could perform the care-taking responsibilities, "he may still be disabled because there is a difference between the ability to engage in sporadic physical activities and the ability to work eight hours a day five consecutive days a week." *Id.* It stated that "[t]his may be even more true when that activity is watching one's own child, as parents disregard their own comfort to care for their children every day and caring for one's own children is not a chief indication of a lack of pain." *Id.* The court concluded that "Delaney's testimony about care-taking may actually contradict the ALJ's conclusion." *Id.*

Finally, the ALJ concluded that "Dr. Salvatore's assessment is not credible because she has not considered all the evidence, and appears to have relied heavily relied on the claimant's subjective complaints (which left out his activities of daily living) that are no[t] credible." (Tr. 18-19.) This is also error, as an ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain. *Id.*; *see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. July 13, 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence"). In the case at hand, the ALJ did not cite any legal or evidentiary basis for this finding that

Dr. Salvatore's opinions were based merely on Plaintiff's subjective complaints of pain, and it is clear that this is not true as Dr. Salvatore made medical findings in support of her opinion as discussed previously.

Similarly, many of the reasons the ALJ gave to reject treating physician Dr. Keefe's opinions are not legitimate. For example, the ALJ rejected Dr. Keefe's opinions because Plaintiff never mentioned that he was the primary caregiver for two young children. (Tr. 20.) This is speculation, however. The fact that Dr. Keefe may not have noted this fact in his records does not necessarily mean that Dr. Keefe was unaware of this issue. Further, the fact that Plaintiff was taking care of two children does not provide a basis to reject Dr. Keefe's opinions, at least not without consulting Dr. Keefe to determine if that type of child care would impact his opinions. The ALJ also speculated that Dr. Keefe "appears to be addressing whether the claimant can perform his work as a crane operator, and not whether the claimant can perform other work in the national economy." (*Id.*) Again, however, this is speculation, and the ALJ did not confirm that issue with Dr. Keefe.

The ALJ also rejected Dr. Keefe's opinions on the basis that "the determination of disability is one left to the Commissioner. However, a treating physician may proffer an opinion that a claimant is totally disabled." *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). Even though this is an issue reserved to the Commissioner, the ALJ must still assess and consider the opinion. "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored." *Miller v Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002). As

-10-

noted earlier, the record shows that Dr. Keefe made many medical findings in support of his opinion which should have been considered in deciding whether to give weight to Dr. Keefe's finding of disability.

Finally the ALJ rejected Dr. Keefe's opinions because "the claimant's pain complaints appear to be out of proportion with the objective imaging results and examinations. (Tr. 20.) However, the Tenth Circuit has indicated that "objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . ." *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988); *see also Boyer v. Astrue*, No. 07-cv-00994-RPM, 2009 WL 353523, at *1 (D. Colo. Feb. 12, 2009) ("[P]ain and fatigue are not necessarily identifiable or measurable by objective diagnostic tests.") Here, the physicians in the case assessed Plaintiff's complaints of pain and found them credible. Thus, the ALJ improperly discounted the complaints of pain.

From the foregoing, it is clear that the ALJ erred in not properly weighing the treating physicians' opinions in assessing the RFC. This is particularly true as it appears from my review of the record that their opinions, and particularly those of Dr. Salvatore, were supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with other substantial evidence in the record. Certainly the ALJ "failed to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

The ALJ also did not state what weight, if any, he actually give Dr. Salvatore's opinion and findings. (Tr. 18.) Further, as to treating physician Dr. Keefe's opinions that Plaintiff is unable to work, the ALJ stated he gave them "little weight (and not controlling weight)", but this does not explain how he weighed Dr. Keefe's opinions. It appears that he rejected both doctors' opinions in their entirety, but the ALJ does not expressly state this. This is also error. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see also* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (the ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight that was given to a medical opinion). These errors are particularly significant in this case because if the treating physicians' opinions are accepted, the record shows that Plaintiff would unable to perform any work. (Tr. 51.)

Further, even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Id.* (quotation omitted).[1] "In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. The ALJ did not appear to give proper deference to the opinions of the treating physicians, did not weigh the relevant factors, or consider for the record what lesser weight should be given to their opinions. The ALJ's failure to apply the correct legal standards or to provide the court with a sufficient basis to

---

[1] These factors are set out in 20 C.F.R. § 404.1527(d).

determine that appropriate legal principles have been followed is grounds for reversal. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

I now turn to the evidence that the ALJ *did* find supported the RFC for light work. The ALJ first cited to the report of consultative examiner Dr. Amin. Among other things, Dr. Amin opined that Plaintiff could lift and carry continuously up to 10 pounds and frequently. (Tr. 279.) He also found that Plaintiff could sit for four hours at a given time and walk and stand for two hours at a given time, with a total of four hours of sitting and four hours of standing and walking in an 8 hour workday due to subjective lower back pain. (*Id.*) The ALJ gave "great weight" to this opinion to the extent it is consistent with the ALJ's RFC. (Tr. 19.) However, the ALJ found "no reasons for the claimant to be able to sit or stand/walk four hours a day, but only four hours during a workday." (*Id.*) Thus, he rejected that limitation and found that Plaintiff can sit six hours in an eight hour workday with normal breaks and stand/walk six hours in an eight hour workday with normal breaks. (*Id.*) In so doing he implicitly rejected Dr. Amin's opinion that Plaintiff's "subjective lower back pain" supported this limitation.

I find that the ALJ improperly substituted his lay judgment for that of Dr. Amin in regard to his findings regarding Plaintiff's ability to sit, stand and walk in an eight-hour workday. He did not cite any medical evidence which supported his opinion, stating merely that he found no reason for this limitation. (Tr. 19.) The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his*

or her own credibility judgments, speculation, or lay opinion.'" *McGoffin*, 288 F.3d at 1252 (quotation omitted, emphasis in original); *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of the physician).

Dr. Amin's finding that Plaintiff could sit, stand and walk for only four hours at a time was important since it supports the finding of treating physician Dr. Keene that Plaintiff could not work. *See* SSR 83-10, 1983 WL 31251, at *6 (1983) (sitting at sedentary jobs generally totals approximately 6 hours of an 8-hour day; "the full range of light work requires standing or waking, off and on, for a total of approximately 6 hours of an 8-hour day"). Dr. Amin's finding also lends support to Dr. Salvatore's opinion regarding Plaintiff's limitations in sitting, standing and walking, which opinion was interpreted by the vocational expert to mean that Plaintiff would be precluded from any work. Since the RFC did not include all of the limitations imposed by Dr. Amin, the ALJ could not rely on Dr. Amin's opinion as support for the RFC. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

The only evidence in the record which was directly contrary to Dr. Salvatore's opinions was the opinion of Anita Antony, a state decision maker ["SDM"]. The ALJ chose to give "great weight" to this opinion, which he mistakenly believed was prepared by a state medical examiner. (Tr. 19.) That opinion was issued in November 2006 and opined that Plaintiff could perform a range of light work. (*Id*. 229-36.) The ALJ found that this opinion was entitled to greater weight than all the other medical opinions, and relied on it in formulating his RFC. (*Id*. 19-20.) However, this opinion did not constitute

substantial evidence in support of the ALJ's decision. As the SDM is not a medical professional, his or her opinion is entitled to no weight. *Cunningham v. Astrue*, No. 09-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16, 2010); *Klobas v. Astrue*, No. 08-cv-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010). Further, as a SDM's opinion does not represent the first hand, direct observations of a lay witness, it does not even constitute evidence from "other non-medical sources" per 20 C.F.R. § 404.1513(d)(4). *Cunningham*, 2010 WL 4737795, at *4.

Thus, the SDM opinion relied on by the ALJ for the RFC is not evidence that can support the RFC finding. This means that the RFC was not supported by any medical evidence or medical facts. Indeed, according to SSR 96-8p, the ALJ's RFC assessment must cite "*specific medical facts*" as well as nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (emphasis added). I also note that the ALJ did not cite any nonmedical evidence in support of his RFC, other than the fact that Plaintiff performed child care for his children. I previously found, however, that the ALJ's belief that Plaintiff's ability to perform child care supported the light RFC was unsupported. Accordingly, the RFC finding of the ALJ is not supported by substantial evidence.[2]

The Commissioner acknowledges that the SDM was not a physician, but argues that the ALJ's reliance on his opinion is harmless error as "Plaintiff has not shown that

---

[2] I also note that the RFC must express the individual's work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL at *1, 5-6. "Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy and very heavy." *Id.* Here, the RFC did not express the exertional limitations on a function-by-function basis, instead simply stating that Plaintiff can perform light work. I also believe the ALJ erred in connection with his assessment of Plaintiff's mental impairments. However, since Plaintiff did not raise this issue, and since it does not impact my decision, I decline to address the issue.

-15-

the ALJ's mistake affected the outcome of his case." (Def. Br. at 15.)  A finding of harmless error is an exceptional circumstance only found when no reasonable fact finder, following the correct analysis, could have resolved the factual matter in any other way.  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  The standard is not met here, especially in light of the vocational expert's testimony that if the ALJ accepted Dr. Salvatore's opinion, it would preclude all marketable employment. (Tr. 51).

Further, the Commissioner misses the point.  The evidence relied on by the ALJ does not provide substantial support for the RFC.  *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("[i]t is axiomatic that all of the ALJ's required findings must be supported by substantial evidence.")  Commissioner's *post hoc* attempts to find evidence in the record to support the RFC are improper.  *Robinson*, 366 F.3d at 1084-85 (The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision. . . .Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'")(quoting *Allen*, 357 F.3d at 1142).

The Commissioner's arguments that the RFC is supported by evidence in the record are also unavailing.  The Commissioner advances as support for the ALJ's RFC finding an opinion from the consultative examiner who, contrary to the ALJ's findings, opined that Plaintiff could not perform the functions required for full time work in terms of sitting, standing and walking.  The ALJ also relied on scattered and selective medical records that provide no support for the ALJ's conclusory RFC assessment.  For example, the Commissioner cites to a normal nerve conduction study and radiological

evidence which showed "minimal" disc disease with no evidence of spinal stenosis, cord compression, or nerve root compression" but does not explain how this translates into a light RFC. (Def. Br. at 17.) Further, these records provide no basis to discount the detailed assessment of Plaintiff's abilities by Dr. Salvatore, particularly since there are many medical findings in the record which lend support to Dr. Salvatore's opinions.

As to the Commissioner's argument that the ALJ would have decided the same way even without the SDM's opinion, I agree. However, this does not result in a favorable outcome for the Commissioner. Instead, I find it patently clear from the ALJ's decision that, regardless of the evidence in the case which clearly supported Plaintiff's complaints of pain and other problems due to his impairments, the ALJ based his decision on an improper credibility judgment that Plaintiff was seeking disability insurance only due to the fact that he was a stay-at home dad.

On that issue, the ALJ stated, "It appears that [Plaintiff] has some other motive for exaggerating his pain complaints - such as he would likely to appear disabled for worker's compensation and Social Security purposes so he can be a stay-at-home-dad." (Tr. 20.) He further stated:

> It appears that with two young children, he found that it more cost effective to stay home and raise the children rather than place them in daycare. Daycare would cost between $20,000 to $30,000 a year total for both children. The claimant made $34,000 in 2005. Thus, it appears that it was more cost beneficial for him to stay home and care for the children, not pay for day care, and attempt to collect Social Security Disability and worker's compensation. And, this explains the minimal objective findings, the lack of disclosure of his caregiver role to any of his treatment providers, and his inconsistent use of pain medication and a cane.

(*Id.*)

Findings as to credibility must, however, rest on "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted). The ALJ cited no evidence to support his conclusions and, as stated earlier, disregarded substantial evidence in the record that supported Plaintiff's claim that he was unable to work as a result of his medical impairments. Credibility judgments by themselves "'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'" *McGoffin*, 288 F.3d at 1252 (quotation omitted). Further, a decision that disregards substantial evidence or employs a piecemeal gathering of evidence to support a preconceived conclusion does not satisfy the substantial evidence test. *Himmelreich v. Barnhart*, 299 F. Supp. 2d 1164, 1167 (D. Colo. 2004).

### C.     The Appropriate Remedy

The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.'" *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotations omitted). Reversal and remand for an award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id.*

In this case, the record shows that Plaintiff suffers from many impairments which significantly limit his ability to work. If treating physician Dr. Salvatore's opinion regarding Plaintiff's functional limitations was given controlling weight, the vocational expert testified that Plaintiff would be unable to work. Treating physician Dr. Salvatore's opinion as to

Plaintiff's RFC was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence in the record as noted in this Order. Accordingly, I find that Dr. Salvatore's opinion should have been given controlling weight and Plaintiff should have been found disabled as a result.

This finding is supported by the fact that the only medical evidence relied on by the ALJ for the RFC, a consultative examination of Dr. Amin, supports Dr. Salvatore's opinions that Plaintiff is limited in sitting, standing and walking. Again, this results in Plaintiff not being able to work full time. Indeed, there is no other medical evidence to the contrary regarding Plaintiff's RFC. Accordingly, I find that an outright reversal and remand for immediate award of benefits is appropriate since the record fully supports a determination that Plaintiff is disabled as a matter of law.

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for an immediate award of benefits, rather than a rehearing.

Dated March 28, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge